## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEPHEN BUSHANSKY, | ) | Civil Action No.  1:19-cv-11951 |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATION OF THE** |
| | ) | **FEDERAL SECURITIES LAWS** |
| CARBON BLACK, INC., PATRICK | ) | |
| MORLEY, JEFFREY FAGNAN, RONALD | ) | **JURY TRIAL DEMANDED** |
| H. NORDIN, VANESSA PEGUEROS, | ) | |
| JOSEPH TIBBETTS, JR., JILL A. WARD, | ) | |
| and ANTHONY ZINGALE, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This action is brought by Plaintiff against Carbon Black, Inc. ("Carbon Black" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Carbon Black will be acquired by VMware, Inc. ("VMware") through its indirect wholly-owned subsidiary Calistoga Merger Corp. ("Merger Sub") (the "Proposed Transaction").

2.     On August 22, 2019, Carbon Black and VMware issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement")

to sell Carbon Black to VMware.  Under the terms of the Merger Agreement, VMware will acquire all outstanding shares of Carbon Black for $26.00 in cash per share of Carbon Black's common stock (the "Offer Price").  Pursuant to the Merger Agreement, VMware, through Merger Sub, commenced the Tender Offer on September 6, 2019.  The Tender Offer is scheduled to expire at 12:00 midnight, New York City time, at the end of October 3, 2019.  The Proposed Transaction has an enterprise value of approximately $2.1 billion.

3.      On September 9, 2019, Carbon Black filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Carbon Black stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Carbon Black management's projections, utilized by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) the background leading to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Carbon Black stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

4.      In short, the Proposed Transaction will unlawfully divest Carbon Black's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Carbon Black is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Carbon Black.

9.      Defendant Carbon Black is a Delaware corporation with its principal executive offices located at 1100 Winter Street, Waltham, Massachusetts 02451.  Carbon Black's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "CBLK."

10.      Defendant Patrick Morley ("Morley") has been President, Chief Executive Officer ("CEO") and a director of the Company since December 2007.

11.     Defendant Jeffrey Fagnan ("Fagnan") has been a director of the Company since December 2004.

12.     Defendant Ronald H. Nordin ("Nordin") has been a director of the Company since November 2007.

13.     Defendant Vanessa Pegueros ("Pegueros") has been a director of the Company since February 2019.

14.     Defendant Joseph Tibbetts, Jr. ("Tibbetts") has been a director of the Company since July 2015.

15.     Defendant Jill A. Ward ("Ward") has been a director of the Company since December 2018.

16.      Defendant Anthony Zingale ("Zingale") has been a director of the Company since December 2015.

17.      Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     VMware is a Delaware corporation with its principal executive offices located at 3401 Hillview Avenue, Palo Alto, California 94304.  VMware is a pioneer in the development and application of virtualization technologies and helps customers manage their information technology ("IT") resources.   VMware's common stock is traded on the New York Stock Exchange under the ticker symbol "VMW."

19.     Merger Sub is a Delaware corporation and wholly owned subsidiary of VMware.

## SUBSTANTIVE ALLEGATIONS

### Company Background

20.     Carbon Black provides cloud-delivered, next-generation endpoint security solutions and is an innovator in the Endpoint Protection Platform ("EPP") market.  The Company's big data and analytics platform, the CB Predictive Security Cloud ("PSC"), consolidates endpoint security and IT operations into an extensible cloud platform that prevents advanced threats, provides actionable insight and enables businesses to simplify operations.

21.     On May 2, 2019, the Company announced its first quarter 2019 financial results, including, revenue of $58.6 million, a 21% increase from the first quarter 2018, and cloud revenue of $21.0 million, an 80% increase from the first quarter 2018.  The Company's annualized value of all active subscription contracts as of the end of a period ("ARR") was $226.0 million, a 24% increase from the first quarter 2018.  The Company ended the quarter with 5,339 total customers and 3,169 cloud customers.  Defendant Morley commented on the financial results, stating:

> Carbon Black began 2019 with solid first quarter results highlighted by 24% total ARR growth and 80% growth in cloud revenue. . . . We entered 2019 as a cloud-first company with a focused go-to-market strategy that leverages the powerful capabilities of our cloud platform, the CB Predictive Security Cloud® (PSC), to protect customers from today's advanced cyberattacks.
>
> We were very pleased with the initial market interest in our two newest PSC solutions, CB ThreatHunter and CB LiveOps™.  These products provide customers with capabilities that we believe no other cloud EPP provider can match.  We are confident our expanded product portfolio will enable Carbon Black to be one of the primary beneficiaries of the endpoint security market's shift to the cloud.

22.     On August 1, 2019, Carbon Black announced its second quarter 2019 financial results.  For the quarter, total revenue was $60.9 million, a 19% increase compared to the second quarter 2018.  Cloud revenue was $22.9 million, a 68% increase from the second quarter 2018.  ARR for the quarter was $237.6 million, a 22% increase compared to the second quarter 2018.  Defendant Morley commented on the quarter's financial results, stating:

Carbon Black's second quarter results demonstrated the company's successful transition to a cloud first company powered by our leading, cloud-native endpoint protection platform (EPP), the Predictive Security Cloud® (PSC). . . . We reached an important milestone in the quarter with cloud ARR exceeding $100 million, which reflects growing customer demand for a cloud EPP solution that can successfully protect against today's increasingly sophisticated cyberattacks.

Our cloud EPP, which includes highly differentiated products like CB ThreatHunter and CB LiveOps™, is extending the boundaries of the EPP market.  Customer reaction to our expanded product portfolio remains very positive and gives us confidence Carbon Black can drive strong cloud growth for the foreseeable future.

**The Proposed Transaction**

23.     On August 22, 2019, Carbon Black and VMware issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**PALO ALTO, Calif., August 22, 2019 –** VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, and Carbon Black (NASDAQ: CBLK), a leader in cloud-native endpoint protection, today announced that the companies have entered into a definitive agreement by which VMware will acquire Carbon Black in an all cash transaction for $26 per share, representing an enterprise value of $2.1 billion. Following the close of the transaction, VMware will be positioned to provide a highly differentiated, intrinsic security cloud that will better protect enterprise workloads and clients through big data, behavioral analytics and AI.

Carbon Black is a leading next-generation security cloud provider with more than 5,600 customers and 500 partners globally. The company's innovative cloud-native security platform leverages big data and behavioral analytics to provide comprehensive endpoint protection against even the most advanced cyberattacks.  The combination of Carbon Black's solutions with VMware's security offerings, including AppDefense, Workspace ONE, NSX and SecureState, will create a modern security cloud platform for any application, running on any cloud, on any device.  This combined offering will provide customers advanced threat detection and in-depth application behavior insight to stop sophisticated attacks and accelerate responses.

The distribution and enterprise reach of VMware and Dell will further accelerate the adoption of Carbon Black in the enterprise, both through direct selling and through partners, including leading managed security players, channel partners and system integrators.

"The security industry is broken and ineffective with too many fragmented solutions and no cohesive platform architecture. By bringing Carbon Black into the

VMware family, we are now taking a huge step forward in security and delivering an enterprise-grade platform to administer and protect workloads, applications and networks," said Pat Gelsinger, CEO, VMware. "With this acquisition, VMware will also take a significant leadership position in security for the new age of modern applications delivered from any cloud to any device."

"Today marks an exciting milestone for Carbon Black, VMware and the entire cybersecurity industry," said Patrick Morley, CEO, Carbon Black. "We now have the opportunity to seamlessly integrate Carbon Black's cloud-native endpoint protection platform into all of VMware's control points. This type of bold move is exactly what the IT and security industries have been looking to see for a very long time. We look forward to working with the VMware team to continue delivering a modern security cloud platform to customers around the world. Additionally, we're pleased that today's transaction provides Carbon Black's shareholders with immediate and substantial value."

### DETAILS REGARDING THE TRANSACTION

Under the terms of the transaction, which is structured as a cash tender offer, Carbon Black shareholders who validly tender (and do not properly withdraw) their shares in Carbon Black, will receive $26 per share in cash, representing an enterprise value of $2.1 billion. The transaction is expected to be funded through cash on the balance sheet, and by accessing short-term borrowing capacity. Closing of the transaction is expected in the second half of VMware's fiscal year 2020, ending January 31, 2020, and is subject to customary conditions, including, VMware's acquisition of at least a majority of the shares of Carbon Black, and the expiration or termination of the required waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, among others.

**Insiders' Interests in the Proposed Transaction**

24.     Carbon Black insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Carbon Black.

25.     Notably, certain Company insiders have secured positions for themselves with the combined company upon consummation of the Proposed Transaction.  Each of defendant Morley, Thomas Hansen ("Hansen"), Carbon Black's Chief Operating Officer, and Ryan Polk ("Polk"), Carbon Black's Chief Product Officer and Senior Vice President, have entered into offer letters

with VMware providing for their continued employment with VMware from and after closing of the Proposed Transaction.  According to the Recommendation Statement, the effectiveness of the offer letters is contingent on closing of the Proposed Transaction.  Recommendation Statement at 10.

26.     Additionally, Company insiders stand to reap substantial financial benefits for securing the deal with VMware.  The following table summarizes the cash payments the Company's insiders stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| | Vested Company Options(1) | | | Vested Company RSUs(1) | | |
|---|---|---|---|---|---|---|
| | Shares of Common Stock Underlying Vested Company Options | Weighted Average Exercise Price | Aggregate Vested Company Option Payment(2) | Company RSUs | Aggregate Company RSUs Payment(3) | Total Equity Award Consideration |
| **Executives** | | | | | | |
| Patrick Morley | 2,275,069 | $ 4.22 | $ 49,547,013 | — | $ — | $ 49,547,013 |
| Thomas Hansen | 180,538 | $ 6.09 | $ 3,594,720 | — | $ — | $ 3,594,720 |
| Ryan Polk | 74,451 | $ 6.57 | $ 1,446,565 | — | $ — | $ 1,446,565 |
| Michael Viscuso | 495,207 | $ 2.42 | $ 11,675,041 | — | $ — | $ 11,675,041 |
| Stephen Webber | — | — | — | — | $ — | — |
| | | | | | | |
| **Directors** | | | | | | |
| Jeffrey Fagnan | — | $ — | $ — | 9,375 | $ 243,750 | $ 243,750 |
| Tom Killalea | 125,000 | $ 5.88 | 2,515,000 | 9,375 | $ 243,750 | 2,758,750 |
| Ronald H. Nordin | 104,792 | $ 4.76 | 2,225,603 | 9,375 | $ 243,750 | 2,469,353 |
| Vanessa Pegueros | — | $ — | $ — | 18,975 | $ 493,350 | $ 493,350 |
| Joseph S. Tibbetts, Jr. | 148,442 | $ 5.30 | 3,073,031 | 9,375 | $ 243,750 | 3,316,781 |
| Jill A. Ward | — | $ — | $ — | 22,091 | $ 574,366 | $ 574,366 |
| Anthony Zingale | 205,300 | $ 5.40 | 4,229,104 | 9,375 | $ 243,750 | 4,472,854 |

27.     Moreover, if they are terminated in connection with the Proposed Transaction, Carbon Black's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash(2) | Equity(3) | Perquisites/ Benefits(4) | Total |
|---|---|---|---|---|
| Patrick Morley | $ 1,351,875 | $ 15,701,398 | $ 38,469 | $ 17,091,742 |
| Thomas Hansen | $ 800,000 | $ 10,747,121 | $ 23,499 | $ 11,570,620 |
| Mark Sullivan(5) | $ — | $ — | $ — | $ — |

**The Recommendation Statement Contains Numerous Material Misstatements or Omissions**

28.     The defendants filed the materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Carbon Black's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal.

29.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Carbon Black management's projections, utilized by the Company's financial advisor, Morgan Stanley, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) the background leading to the Proposed Transaction. Accordingly, Carbon Black's stockholders are being asked to tender their shares in connection with the Tender Offer or seek appraisal without all material information at their disposal.

*Material Omissions Concerning Carbon Black's Financial Projections*

30.     The Recommendation Statement fails to disclose material information relating to Carbon Black management's financial projections.

31.     In connection with Morgan Stanley's *Discounted Cash Flow Analysis*, Morgan Stanley:

> calculated the estimated unlevered cash flows, which were calculated as EBITDA (unburdened by stock based compensation) less (i) stock-based compensation expense, (ii) taxes, (iii) capital expenditures, and (iv) changes in net working capital. The Management Case included estimates from the financial forecasts prepared by Company management through 2024. Company management reviewed and approved extrapolations for the Management Case projections through 2029. For purposes of its valuation analysis, ***Morgan Stanley also included the value of existing and newly created tax attributes***. Morgan Stanley, for

purposes of calculating the tax savings from net operating loss utilization, assumed that the Company's net operating losses are not limited by section 382 of the Code, have no expiration and are fully utilized over the projected period at the annual amounts available for utilization based on forecasted taxable earnings before taxes under the Management Case. Morgan Stanley also calculated a range of terminal values by applying perpetuity growth rates ranging from 2.0% to 4.0%, which range was selected by Morgan Stanley based upon the application of its professional judgment and experience, ***to the estimated unlevered free cash flows of the Company after calendar year 2029***.

*Id*. at 35 (emphasis added).

32.     The Recommendation Statement fails, however, to disclose (i) the Company's existing and newly created tax attributes over the projection period; and (ii) the estimated unlevered free cash flows of the Company after calendar year 2029.

33.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

34.     The omission of this information renders the statements in the "Certain Prospective Financial Information." and "Opinion of the Company's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

35.     The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Carbon Black's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what

weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to tender their shares in connection with the Tender Offer or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Carbon Black's stockholders.

36.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement fails to disclose: (i) the Street Case calendar year 2022 estimated revenue; (ii) the Street Case projected net cash; (iii) the Management Case projected net cash; and (iv) quantification of the individual inputs and assumptions underlying the discount rate of 9.0%.

37.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the estimated unlevered free cash flows of the Company after calendar year 2029 used to derive the range of terminal values in the analysis; (ii) the implied terminal multiples resulting from the analysis; (iii) the value of existing and newly created tax attributes; and (iv) quantification of the individual inputs and assumptions underlying the range of discount rates from 8.0% to 10.0%.

38.     These key inputs are material to Carbon Black's stockholders, and their omission renders the summary of Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*

39.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" and "Certain Prospective Financial Information" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41.     The Recommendation Statement is materially deficient because it fails to disclose material information relating to the background of the process leading to the Proposed Transaction.

42.     Specifically, the Recommendation Statement fails to disclose whether any of VMware's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

43.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     The omission of this information renders the statements in the "Background of the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

45.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the

Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Carbon Black stockholders will be unable to make a fully-informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Carbon Black stockholders to tender their shares in the Tender Offer.

48.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

49.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

50.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

51.      The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and other Carbon Black stockholders, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

52.      Plaintiff repeats all previous allegations as if set forth in full.

53.      Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

54.      Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

55.      As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

56.     Plaintiff repeats all previous allegations as if set forth in full.

57.     The Individual Defendants acted as controlling persons of Carbon Black within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Carbon Black and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

60.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues

and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

61.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Carbon Black, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 13, 2019

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
**OF COUNSEL:**
Wellesley, Massachusetts 02482
(781) 453-0100
**WEISSLAW LLP**
mmatorin@matorinlaw.com
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*